**CITY OF PHILADELPHIA**
v.
**EMHART CORPORATION et al.**
**AMHERST LEASING CORPORATION et al.**
v.
**EMHART CORPORATION et al.**
**Civ. A. Nos. 70–352, 70–494.**

United States District Court,
E. D. Pennsylvania.
June 23, 1970.

See also D.C., 317 F.Supp. 1320.

and include keys which open only a single lock in the system, and master keys, which will open all or a group of locks within the system. On July 11, 1969, the Justice Department brought separate but identical civil actions against each of the four defendants in this case, which charged them with violating Section 1 of the Sherman Act by entering into unlawful vertical agreements with their distributors providing that such distributors would not sell outside of their allocated territories, would not compete against other distributors of the same manufacturer who had already written specifications for a Master Key System, and would not bid on extensions to Master Key Systems installed by another distributor. To date three of the defendants, Ilco, Emhart, and Sargent, have elected to terminate their litigation with the Government by entering into consent decrees.

Meanwhile, two suits have been commenced in this Court against all four defendants alleging the same vertical conspiracies alleged by the Government and, in addition, alleging a horizontal conspiracy between all defendants by which they agreed among themselves to carry out the terms of their vertical conspiracy. It is also alleged that the defendants fraudulently concealed their conspiracies, and that, as a result of such conspiracies, prices of Master Key Systems were artificially raised, fixed, and stabilized at non-competitive levels.

In its complaint, the City of Philadelphia seeks to maintain a class action on behalf of itself and "all state, county, and local governmental authorities and agencies in the United States who have purchased locks with Master Key Systems from one or more of the defendants. \* \* \*" Plaintiff estimates that this class numbers in excess of 21,000, consisting of fifty states and the District of Columbia, 3,049 counties, 18,048 municipalities, and governmental agencies, of which the precise number is not known to the plaintiff. In the other

David Berger, H. Laddie Montague, Jr., Philadelphia, Pa., for plaintiff.

Henry T. Reath, Duane, Morris & Heckscher, Philadelphia, Pa., for Emhart Corporation.

Edwin P. Rome, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for defendant Sargent & Co.

Miles W. Kirkpatrick, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant Eaton, Yale & Towne, Inc.

Richard G. Schneider, Dechert, Price & Rhodas, Philadelphia, for ILCO Corporation.

## OPINION AND ORDER

WOOD, District Judge.

This is a motion by the defendants seeking an order that the above-captioned case may not be maintained as a class action pursuant to Rule 23. The defendants are manufacturers of so-called Master Key Systems, which are lock and key systems designed specifically for a particular complex of buildings,

action, the plaintiffs are Amherst Leasing Corporation and 45 other builder-owners of apartment houses and/or office buildings, and they seek to represent a class consisting of "owners and builder-owners of apartments, hotels, motels and office buildings throughout the United States who have purchased locks of Master Key Systems manufactured by one or more of the defendants." It is alleged that during 1960–69 there were approximately 184,818 residential units for five or more families constructed throughout the United States and approximately 87,499 office buildings and that in 1968, there were approximately 21,400 hotels and 44,000 motels throughout the United States.

■ In order to have his action qualify for class action treatment, the plaintiff has the burden of showing that the four prerequisites of Rule 23(a) are satisfied and, in addition, the proposed class action comes within one of the three categories enumerated in Rule 23(b). Philadelphia Electric Company v. Anaconda American Brass Co., 43 F. R.D. 452 (E.D.Pa.1968). Since the plaintiff's qualifications with respect to the relevant criteria under Rule 23 are well covered in his brief, we will confine our consideration here to the points raised by the defendant. The defendant first contends, citing Judge Fullam's opinion in Philadelphia Electric Company v. Anaconda American Brass Co., *supra*, that in order to be declared a class action, the plaintiffs must present a "genuine issue", that is, some indication that his claim may have merit beyond mere pleadings. 43 F.R.D. at 458. In that case Judge Fullam concluded that:

 * * * "It is enough for present purposes to state that the indictments, the sentences imposed thereunder, and some of the results of the discovery to date, together warrant a finding that plaintiffs' claim of conspiracy may have merit and is a genuine issue in this litigation."

It is then argued that as to the alleged horizontal conspiracy, there is no indication of merit other than the plaintiff's pleadings and that these pleadings have been effectively nullified by affidavits filed by officers of the defendant corporations denying any conspiracy with each other. As to the alleged vertical conspiracies, the defendants contend that since the Master Key System is a highly individualized unit which is tailor-made to suit each customer's particular needs, and since distribution arrangements differ greatly from region to region, questions of law and fact common to the members of plaintiffs' class do not predominate over questions affecting only individual members, as required by Rule 23(b) (3).

It is not clear from the relevant cases whether, and if so what, preliminary showing of merit to the plaintiffs' claim is a prerequisite to the maintenance of a class action. Rule 23 itself, which is detailed in some aspects, does not provide for any such preliminary determination. However, in view of the obvious burden on the Court and on the defendant of maintaining a class action, some courts have required a preliminary showing of substantiality before declaring a class action or before sending out notice to the proposed class. In Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968) after a full opportunity for discovery, Judge Weinstein ordered a hearing at which he required the plaintiffs to show a "substantial possibility that they will prevail on the merits" before allowing the class action to proceed and notice to be sent out. On the other hand, Judge Metzner in similar circumstances in Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y.1968) reached a nearly opposite conclusion:

 * * * "In this case such a hearing would be a fact-finding procedure that would deprive the plaintiff and the class of the right to a jury trial. It would turn rule 23 into a cumbersome procedure. I cannot conceive

that the drafters of the rule intended necessarily extensive hearings to determine facts which may be ultimate to the litigation." 45 F.R.D. at 469.

Although the Second Circuit has not yet resolved the disparity between these two cases, see Green v. Wolf Corporation, 406 F.2d 291, 301, fn. 15 (2nd Cir. 1968), language in the recent decision of our Circuit in Kahan v. Rosenstiel, 424 F.2d 161 (1970), albeit on a somewhat different point, suggests that it inclines toward the less onerous rule from the plaintiff's point of view at least at the outset of the case

> * * * "The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." (p. 169)

This would seem to be in accord with the suggestion of Professor Moore that the requisite preliminary showing be a "minimal demonstration that the complaint is sincere and the aggregate group claim is substantial" or a "demonstration that the claim put forth on behalf of the class is more than frivolous or speculative." 3B Moore's Federal Practice, ¶ 23.45[3]. *Cf.* Philadelphia Electric Company v. Anaconda American Brass Co., *supra*.

At this juncture of the case, the plaintiff has satisfied the minimal burden suggested by the latter cases. While we do not decide now what burden we may place on the plaintiffs before sending out notice or allowing the action to proceed at some later point, to impose any further burden on the plaintiff at this time would be premature and unfair to the plaintiff. The defendants here have made a motion to deny a class action and a ·motion to stay discovery, so that the plaintiff has not had the opportunity to develop his case far beyond the pleadings. However, if at some later time after discovery has proceeded and other preliminary motions are disposed of, we will again entertain a motion on this ground if the defendants at that time desire to press it.

With regard to the defendant's contention that if the allegations of a horizontal conspiracy fall, a class action on the basis of a separate vertical conspiracy could not be maintained, we must disagree, at least from the vantage point of the threshold of the case. Pursuant to Rule 23(c) (3) we could at the proper time divide the plaintiffs' class into four separate subclasses, one for each manufacturer's chain of distribution. For each class, there would then be one predominant question common to the class, namely, whether that manufacturer's distributorship agreements providing for the allocation of market territories violated Section 1 of the Sherman Act and, if so whether such violation damaged the members of plaintiffs' class. "Here as in the normal antitrust case, proof of the conspiracy will present predominant questions of both law and fact." State of Minnesota v. United States Steel Corporation, 44 F.R.D. 559, 572 (D.C.Minn.1968). See also State of Illinois v. Harper and Row Publishers, Inc., 301 F.Supp. 484 (N.D.Ill.1969); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968); Rule 23(c) (4) (B). The situation may, of course, take on another aspect as discovery proceeds and the case takes shape; if "individual questions arise during the course of litigation, which render the action 'unmanageable' the court still has the power at that time to dismiss the class action and permit the plaintiff to proceed only on behalf of himself." *Eisen, supra*, at p. 566.

Similarly, the defendant's objections with respect to manageability of the action and feasibility of notice may become valid as the action progresses, but at the present time they are only conjectural. As the Second Circuit in *Eisen, supra*, stated in reversing the lower

court and remanding for a factual hearing on these questions:

\* \* \* "the dismissal *in limine* of a particular proceeding as not a proper class action is justified only by a clear showing to that effect and after a proper appraisal of all the factors enumerated on the face of the rule itself." 391 F.2d at 563.

Accordingly, since we think that at this juncture the plaintiff has presented a proper class action, and since it is the better practice in these circumstances to tentatively grant class action treatment, see Green v. Wolf Corporation, 406 F.2d 291, 298 fn. 10 (2nd Cir.1968), we will at this time order that a class action may be maintained. At the same time, as previously stated, we reserve all our powers under Rule 23(c) (1) to alter our order or deny class action treatment at any time. *Cf.* Advisory Committee Note at 39 F.R.D. 104. Moreover, we will not approve the sending out of notices until any preliminary motions are disposed of, and until the defendants have had the opportunity, if they desire it, to challenge the substantiality of the plaintiff's case or to again contest the propriety of a class action after all the relevant facts are on the record. 3A Moore's Federal Practice, ¶ 23.45[3]; Fischer v. Kletz, 41 F.R.D. 377, 386 (S.D.N.Y.1966).

In the meantime, in order to expedite this case, we will set down for argument in the near future the defendant's objections to plaintiff's interrogatories as well as any other discovery matters then pending. To the same purpose, and to further clarify some of the issues raised in this opinion, we are directing the parties to file factual and legal memoranda on several of these issues.

ORDER

And now, this 23rd day of June, 1970, it is ordered that pursuant to Rule 23(c) (1) this action will be allowed to proceed as a class action subject to our power under that Rule to alter, amend, or add conditions to this order at any future time.

It is further ordered that the plaintiff's motion for a stay of discovery is denied.

It is further ordered that all pending discovery matters will be set down for argument on our next available argument list.

It is further ordered that at some future date to be determined a hearing will be held on the issues of notice and the precise definition and/or limitation of the class or classes.

It is further ordered that at least twenty days in advance of such hearing, the plaintiff shall file a memorandum of law and related facts in this case stating specifically (a) how and by what means he proposes to have the other members of the class he purports to represent pursuant to Rule 23(c) (2) notified; (b) who will bear the cost of such notice; (c) what amount or expense he is prepared to bear if it is decided that the plaintiff must pay for notice; (d) any factual information which he deems relevant to the determination of a manageable class or classes; (e) any proposals which he may have for limiting the size or increasing the manageability of the class; and (f) how in general outline this case should be administered.

It is further ordered that the defendants shall file a reply memorandum at least 5 days in advance of the hearing.