**Alfred L. KENNAN, M.D., Plaintiff,**

**v.**

**Robert WARREN, Attorney General for the State of Wisconsin, et al., Defendants.**

**No. 71–C–132.**

United States District Court, W. D. Wisconsin.

May 5, 1971.

Supplemental Opinion May 6, 1971.

As Amended May 10, 1971.

Opinion and Temporary Restraining Order May 15, 1971.

David C. Pappas, Charles P. Dykman, Madison, Wis., for plaintiff.

LeRoy Dalton, Robert D. Martinson, Asst. Attys. Gen., Madison, Wis., for defendants.

## OPINION AND TEMPORARY RESTRAINING ORDER OF MAY 5, 1971

JAMES E. DOYLE, District Judge.

This action (commenced April 28, 1971) relates to certain facets of a controversy centering upon the alleged operation by the plaintiff and his staff of a medical center in the City of Madison in this district, in which, it is alleged, abortions have been performed in violation of Sections 940.04(1) and (5), and 448.18 (1) (a), Wis.Stat.

It appears that there are at least three legal facets of this controversy: (1) a criminal prosecution against Dr. Kennan and certain members of his staff which was commenced on April 21 or April 22, 1971, by the District Attorney of Dane County, Wisconsin, in the County Court for Dane County, charging violations of Section 940.04(1) and (5); (2) a civil action commenced by the Attorney General of Wisconsin (by the service of a summons and complaint on April 21, 1971) in the Circuit Court for Dane County, Wisconsin, in which the State of Wisconsin is the plaintiff and Dr. Kennan is the defendant (No. 133151 in that court), which action purports to have been brought pursuant to Section 448.19, Wis.Stat., in which it is alleged that Dr. Kennan has repeatedly violated Sections 940.04(1) and 448.18(1) (a), Wis.Stat.,

and in which judgment is sought permanently enjoining Dr. Kennan and his staff from activity relating to the performance of other than "therapeutic" abortions as defined in Section 940.04 (5), Wis.Stat.; and (3) a written warning by the Medical Examining Board of the State of Wisconsin, addressed to Dr. Kennan by the Board on April 27, 1971, that the Board will immediately suspend his license, pursuant to Section 448.18 (7), Wis.Stat., unless he ceases to perform abortions "except in strict conformity to the exception to the criminal abortion law as stated in sec. 940.04(5), Stats., and in strict conformity with accepted medical and surgical standards." I will refer to these three facets herein as "the state court criminal action," "the state court civil injunction action," and "the Medical Board proceeding."

(1) *The state court criminal action.*

In an action initiated by Dr. Kennan in this court on April 20, 1971, under 42 U.S.C. § 1983 (Kennan et al. v. Nichol, W.D.Wis., No. 71–C–118, 326 F.Supp. 613), I entered a temporary restraining order April 27, 1971, pursuant to 28 U.S.C. § 2284(3). I initiated the convening of a three-judge court by the Chief Judge of the Circuit. A three-judge court has been convened by the Chief Judge of the Circuit. It consists of Circuit Judge Kerner, and District Judges Reynolds and Gordon. I have withdrawn from the action, and Judge Gordon is acting as the single United States District Judge for the Western District of Wisconsin in the action, as well as acting as a member of the three-judge court.

The temporary restraining order entered April 27, 1971, enjoined the defendant District Attorney of Dane County, "and any and all persons acting in concert with him or at his direction or under his control" from further enforcement of Section 940.04(1) and (5), Wis. Stat., against Dr. Kennan and his staff, in any case involving an embryo of four months or less.

At a hearing in this court on May 4, 1971, in the present case (71–C–132),

counsel for Dr. Kennan contended that by pursuing the state court civil injunction action, the Attorney General of Wisconsin is "acting in concert" with the District Attorney of Dane County, in violation of the temporary restraining order entered April 27, 1971, in 71–C–118. I permitted counsel for Dr. Kennan to state the contention, and I provided the opportunity for the Assistant Attorney General to respond. However, it is clear that I have no authority to deal with such a contention. If there is a desire to pursue it, it must be directed to the three-judge court which has been convened in 71–C–118, the action in which the temporary restraining order of April 27, 1971, was entered.

### (2) The state court civil injunction action.

The complaint by Dr. Kennan against the Attorney General and the Medical Board in this present action, 71–C–132, alleges, among other things, that the Attorney General, acting as counsel for the Board, has commenced an action in state court to enjoin the operation of Dr. Kennan's clinic. The verified complaint prays for a temporary restraining order restraining the Attorney General and the Board from suspending, revoking or otherwise interfering with Dr. Kennan's license, "or from any other method of further enforcement against [Dr. Kennan] of Sections 940.04(1) and (5) and 448.18, Wis.Stat., in any case involving an embryo of four months or less," and prays for such other relief as the court deems just and proper. I entered an order to show cause on April 28, 1971, in the form submitted by counsel for Dr. Kennan, returnable May 4, 1971, requiring the Attorney General and the Board to show cause why they should not be restrained temporarily from interfering with Dr. Kennan's license, and temporarily "suspending and restraining the operation, enforcement, or execution of Chapter 448 of the Wisconsin Statutes. * * * "

■ On May 3, 1971, there was filed in this action in this court a verified "amended complaint" in which the defendants (the Attorney General and the Board) remained as they were in the original complaint, but in which a second plaintiff, Adrienne H. Campbell, is shown. Parties may be added to an action only by order of the court. Rule 21, Federal Rules of Civil Procedure. No such order has been sought or entered. Dr. Kennan was free to amend his complaint, without leave of court, since no responsive pleading had been served. Rule 15(a), Federal Rules of Civil Procedure. I treat the amended complaint as an amended complaint by Dr. Kennan, verified by him, and since it is also verified by Adrienne Campbell, I treat it as an affidavit by her, in support of Dr. Kennan's motion for a temporary restraining order. However, Mrs. Campbell is not presently a party to this action.

The amended complaint includes more detailed allegations concerning the history of the state court civil injunction suit, and I will turn to them in a moment. The relief prayed for includes: a temporary restraining order preventing the defendants from interfering with Dr. Kennan's license or from any other method of further enforcement of Sections 940.04(1) and (5) and 448.18(1) (a) against Dr. Kennan, whether civil or criminal, in cases involving an embryo of four months or less; a temporary restraining order preventing the Attorney General from pursuing the state court civil injunction action and from seeking to enforce an order entered by the state court in that action April 30, 1971; the convening of a three-judge court; consolidation in this court of this action (71–C–132) with the earlier action (71–C–118); and permanent declaratory and injunctive judgments.

■ At the May 4 hearing in this action in this court on the order to show cause with respect to the motion for a temporary restraining order, counsel for the Attorney General and the Board objected to consideration of any temporary relief other than that specifically described in the order to show cause. That is, they contended that the hearing was

limited to the Board's warning that Dr. Kennan's license may be suspended, and that it could not reach the matter of the state court civil injunction action. At the time of the hearing I expressed the view that there was merit to this contention, but I permitted argument on the matter of the state court civil injunction action, and provided an opportunity for the Attorney General to present evidence on the point if he so elected. Subsequently, I have concluded that the Attorney General's contention concerning the scope of the May 4 hearing was without merit. This is because I have since ascertained clearly that the state court civil injunction action was commenced pursuant to Section 448.19, Wis.Stat. The temporary relief sought, as stated in the order to show cause, included an order "suspending and restraining the operation, enforcement, or execution of Chapter 448 of the Wisconsin Statutes." The Attorney General and the Board were thus fairly warned that the May 4 hearing would reach the subject of the state court civil injunction action.

From the entire record herein, and by the exercise of judicial notice of the proceedings in the state court civil injunction action and in the earlier action in this court (71–C–118), I make the following findings of fact, for the purpose of acting upon Dr. Kennan's motion for a temporary restraining order, and for no other purpose.

I find that on April 19, 1971, pursuant to a search warrant issued by a judge of a state trial court, and at the direction of the District Attorney of Dane County, police entered the medical offices occupied by Dr. Kennan and his staff, in the city of Madison in this district, in connection with his specialized practice in the performance of abortions, that the police seized equipment and records, and that the practical effect of the seizure was to prevent the continuation of Dr. Kennan's abortion practice for some period of time. On April 19 and 20 the District Attorney made public statements threatening the imminent arrest of Dr. Kennan under Section 940.04(1), Wis.

Stat. On April 21 or 22, 1971, the District Attorney commenced a criminal action against Dr. Kennan, alleging violations of Section 940.04(1).

An action (71–C–118) was commenced in this court by Dr. Kennan on April 20, 1971, seeking to enjoin the District Attorney from enforcing Section 940.-04(1) and (5).

On April 21, 1971, expressly pursuant to Section 448.19, Wis.Stat. the Board and the Attorney General commenced, in the name of the state, the state court civil injunction action against Dr. Kennan. No order was entered by the court in that action prior to April 30, 1971.

On April 27, 1971, this court entered a temporary restraining order, pursuant to 28 U.S.C. § 2284(3), preventing the District Attorney and those acting in concert with him, from further enforcement of Section 940.04(1) and (5) against Dr. Kennan in any case involving an embryo of four months or less. The order was not limited to criminal prosecutions.

Following the issuance of the April 27, 1971, temporary restraining order in this court, in the action commenced here on April 20 by Dr. Kennan against the District Attorney, the Honorable Richard W. Bardwell, Circuit Judge for Dane County, Wisconsin, telephoned Assistant Attorney General Robert Martinson and advised him that the judge was ready to proceed in the case of State of Wisconsin versus Kennan, case number 133151, and that thereafter on that same date Mr. Martinson presented to Judge Bardwell a proposed order to show cause and a proposed ex parte restraining order against Dr. Kennan, which proposed order to show cause and proposed ex parte restraining order had previously been submitted to Judge Bardwell by the Attorney General but which Judge Bardwell had previously refrained from entering. On April 30, 1971, the state court entered an order to show cause returnable May 5, 1971, at 3:00 p. m., on the question whether Dr. Kennan should be enjoined from his abortion practice pending the final outcome of the

state court action, and an order enjoining Dr. Kennan during the period from April 30, 1971, to May 5.

For reasons stated in some fullness in the opinion I entered in 71–C–118 on April 27, 1971, I conclude that in this present action, 71–C–132, Dr. Kennan enjoys a reasonably good chance of ultimate success in this lawsuit on the merits, if it eventuates that a federal three-judge court is free to pass, and does pass, upon the federal constitutional contention. My April 27 opinion related strictly to Section 940.04(1) and (5), Wis. Stat. However, I conclude that Sections 448.18(1) (a) and 448.19 depend wholly upon Section 940.04(1) and (5), since Section 448.18(1) (a) proscribes as "immoral or unprofessional conduct," "procuring, aiding or abetting a *criminal* abortion" (emphasis added).

■ With respect to the relief sought in this action in this court concerning the state court civil injunction action, I find that jurisdiction here is present. 28 U.S.C. § 1343(3); 42 U.S.C. § 1983.

■ Assuming that there is a federal constitutional right vested in a physician to perform abortions upon an unquickened embryo and a federal constitutional right vested in a pregnant woman to decide whether she should carry or reject an unquickened embryo (and I have concluded above that the plaintiff enjoys a reasonably good chance to prevail in these contentions if the merits are reached by a three-judge federal court), then it clearly follows that to withhold a temporary restraining order against state court interference with these rights is to permit them to be lost irreparably with respect to the physician and those women for whom he could otherwise perform the operation in the meantime. For the present, I need not decide, finally, whether the interests of pregnant women can be considered in a suit to which only the physician is a party, but should this become a critical issue in this suit, Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), causes me to conclude that plaintiffs enjoy a reasonably good chance ultimately to prevail in the contention that the physician does enjoy standing to raise the constitutional rights of his patients and potential patients. In accordance with 28 U.S.C. § 2284(3), I specifically find that irreparable damage will result if a state court restraint continues to prevent Dr. Kennan from performing any abortions except in compliance with Section 940.04(1) and (5), in that time is of the essence for those women for whom Dr. Kennan would otherwise be free to perform abortions and for whom alternative opportunities for this procedure are unavailable, and that the support for this finding and conclusion is to be found in the verified amended complaint.

The principal question with respect to the availability of temporary injunctive relief affecting the state court civil injunction action, is whether the plaintiff has a reasonably good chance ultimately to persuade a federal three-judge court that it should not abstain from acting on the merits of his constitutional claim, and from granting appropriate relief if he prevails on the merits. On this question of abstention, I consider particularly the opinions and orders entered by the Supreme Court of the United States on February 23, 1971, in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed. 2d 688; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed. 2d 781; and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792.

The *Younger* group of cases involved state court prosecutions for alleged violations of criminal statutes and municipal ordinances. Whether the *Younger* doctrine is applicable to a state court civil injunctive action under Section 448.19, Wis.Stat., is a difficult question. However, under the view I take of this situation, this distinction is not critical.

The *Younger* doctrine places heavy emphasis upon whether a state action has actually been commenced prior to the

time that the aggrieved party commences an action in the federal district court to vindicate his asserted federal constitutional rights. In the present situation, Dr. Kennan sought a forum here on April 20 (71–C–118). The state court criminal prosecution by the District Attorney was commenced on April 21 or 22, and the state court civil injunction action under Section 448.19 was commenced on April 21. However, in the action commenced by Dr. Kennan in this court on April 20 (71–C–118), only the District Attorney was named as a defendant. Dr. Kennan's present action (71–C–132) against the Attorney General and the Board was not commenced until April 28. The question, in terms of abstention, appears to require an evaluation of this time sequence.

I believe that the specific provisions of Sections 448.18(1) (a) and 448.19 are critical to this evaluation. Section 448.-18(1) (a) defines "immoral or unprofessional conduct" to include "procuring, aiding or abetting a criminal abortion." Section 448.19 provides that if it appears to the Board upon complaint, or if it is known to the Board, that any person is violating Section 448.18(1) (a)—or other provisions of Chapter 448—the Board or "the district attorney of the proper county may investigate and may, in addition to any other remedies, bring action in the name and on behalf of the state against any such person to enjoin such person from such violation. * * * " Had the District Attorney commenced the state court civil injunctive action against Dr. Kennan on April 21, the *Younger* doctrine would have been inapplicable since Dr. Kennan's action against him (71–C–118) had been filed

here April 20. Thus, it must be determined whether *Younger's* heavy emphasis upon the time sequence can be escaped by having the Attorney General initiate an action to enjoin Dr. Kennan from "procuring, aiding or abetting a criminal abortion." As I have observed above in another connection, the contention that Dr. Kennan has violated Section 448.18(1) (a) turns on whether the abortions he has performed have been "criminal," and this in turn depends upon whether they were in violation of Section 940.04(1) and (5), the enforcement of which against Dr. Kennan had been prohibited by the April 27 order.[1]

I believe that the *Younger* doctrine should not be amplified to deny a federal forum to an otherwise qualified plaintiff, to assert a federal constitutional challenge to Section 940.04(1) and (5), solely because his action in the federal court, filed April 20, failed to anticipate every means by which some state or local governmental officer or agency might subsequently attempt to enforce those very statutory provisions against him. I conclude that Dr. Kennan enjoys a reasonably good chance ultimately to persuade a federal three-judge court not to abstain for this reason.

### (3) *The Medical Board proceeding.*

With respect to this branch of the present case, I incorporate and reaffirm all of those findings of fact and conclusions of law set forth in part (2) of this opinion, and I add the following findings of fact, solely for the purpose of deciding the motion for a temporary restraining order.

[1]. I am aware that the complaint in the state court civil injunction action recites that the State Assembly by resolution "authorized" the Attorney General to commence it, and that the action was brought pursuant to Section 165.25(1), Wis.Stat., as well as Section 448.19. I note that the resolution "requests" him to "institute proceedings in the appropriate court to obtain an injunction." I note that under Section 165.25(1), when requested by a branch of the legislature, the Attorney General shall "appear for the state and prosecute * * * in any court * * * any cause or matter, civil or criminal, in which the state or the people thereof may be in anywise interested." I find nothing in Section 165.25(1) to *create* any cause of action. Therefore, I consider that the state court civil injunction action must rest solely on Section 448.19. In any event, whether the state court civil injuntion action is viewed as having been brought by the Board or independently by the Attorney General, it is an action to enforce Section 940.04(1) and (5).

I find that on or about March 29, 1971, the Board decided to initiate an investigative hearing under Section 448.17, at its next regularly scheduled meeting on April 23, 1971, concerning whether Dr. Kennan's activities in operating an abortion clinic were inimical to public health; that such an investigative hearing was held on April 23; that the testimony presented at said hearing persuaded the Board to continue the investigative hearing, and that the Board voted to warn Dr. Kennan; that by letter dated April 27, 1971, the Board did warn Dr. Kennan that it would immediately suspend his license, pursuant to Section 448.18(7), Wis.Stat., unless he ceased "performing abortions except in strict conformity to the exception to the criminal abortion law as stated in 940.04(5), Stats., and in strict conformity with accepted medical and surgical standards"; and that on April 30, 1971, the Board decided that the April 27 warning would continue to stand as issued.

In accordance with 28 U.S.C. § 2284 (3), I specifically find that if the Board is not temporarily restrained from suspending Dr. Kennan's license for a period of not to exceed three months, and a possible like period thereafter, pursuant to Sec. 448.18(7), irreparable injury will result. I find that this irreparable injury consists of that described in part (2) of this opinion, as well as in an inability to practice any kind of medicine during the suspension or suspensions, as well as the damage to Dr. Kennan's reputation and standing. I find support for these findings in the verified amended complaint.

I conclude that there is no basis for abstention by a federal district court with respect to the Medical Board proceeding. The *Younger* doctrine is unrelated to state administrative proceedings, as distinguished from state court proceedings. In an action under 42 U.S.C. § 1983, a plaintiff is not required to exhaust either state administrative remedies or state judicial remedies. Monroe

v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967).

### ORDER

Like the temporary restraining order entered April 27, 1971 in 71-C-118, this order is intended to be a temporary restraining order entered pursuant to 28 U.S.C. § 2284(3), and it is to remain in force only until the hearing by a full three-judge court if the Chief Judge of the Circuit convenes such a court in response to my notification to him under 28 U.S.C. § 2284(1).

Upon the entire record herein, and pursuant to 28 U.S.C. § 2284(3), it is hereby ordered that:

(1) the defendant Attorney General and the defendant Board and the defendant members of said Board, and any and all persons acting in concert with any of them or at the direction of any of them, are restrained from:

(a) further proceedings under Sections 165.25(1), 448.19, 940.04(1), or 940.04(5), Wis.Stat., whether civil or criminal, to enforce against the plaintiff Alfred L. Kennan, the provisions of Section 940.04(1) and (5) and Section 448.18(1) (a) in any case involving "an embryo of four months or less" (Babbitz v. McCann, 310 F.Supp. 293, 301 (E.D.Wis. 1970)); and

(b) further proceedings under Sections 448.18(1) (a) and 448.18(7), Wis.Stat., and any other provision of any statute and Board regulation, to suspend or to revoke the license of plaintiff Kennan to practice medicine and surgery under Section 448.-06, Wis.Stat., for the sole reason that he has performed abortions, or intends or threatens to perform abortions, otherwise than in conformity with Section 940.04(5),

Wis.Stat., in any case involving "an embryo of four months or less."

It is further ordered that at any time prior to the convening of a three-judge court in this action by the Chief Judge of the Circuit, any party hereto may apply to the single judge of this district for an order modifying or amending the terms of this order.

## SUPPLEMENTAL OPINION

This opinion is intended to supplement the opinion I entered herein on May 5, 1971, in conjunction with the entry of a temporary restraining order. It supplements that portion of the May 5 opinion which dealt with the state court civil injunction action by the State of Wisconsin against Dr. Kennan in the Circuit Court for Dane County.

### (1)

In Goss v. State of Illinois, 312 F.2d 257 (7th Cir. 1963), and Smith v. Village of Lansing, 241 F.2d 856 (7th Cir. 1957), the Seventh Circuit Court of Appeals held that 42 U.S.C. § 1983 is not an exception to 28 U.S.C. § 2283, a provision which generally prevents a federal court from staying state court proceedings. In my dissent from the majority opinion in Zwicker v. Boll, 270 F.Supp. 131 (W.D.Wis.1967), I expressed the view that intervening decisions of the United States Supreme Court were inconsistent with the earlier Seventh Circuit opinions. This view also has been expressed by the United States District Court of the Northern District of Illinois in Landry v. Daley, 288 F.Supp. 200 (N.D.Ill.1968).

The Court of Appeals for the Seventh Circuit, in one portion of its opinion in Boyle v. Landry, 422 F.2d 631 (7th Cir. 1970), appears to reaffirm its holdings in Goss and Smith, that injunctions to stay proceedings in a state court have not been "expressly authorized" by 42 U.S.C. § 1983. However, if this were the holding in Boyle, it would follow that in a § 1983 action, 28 U.S.C. § 2283 would constitute an absolute bar to an injunction against proceedings in a state court. I am obliged to conclude that this was not the intended holding in Boyle because the bulk of the opinion was devoted to a discussion of whether the district court's injunction was "an abuse of discretion" (422 F.2d at 634); whether the district court had made a finding that the state court prosecution was in "bad faith" (id.); whether the state court "prosecutions are so great and extensive as to result in a chilling effect on First Amendment rights" "sufficient to justify federal intervention" (id.); and whether there had been a showing that any federal question arising in the state court trial would not be adequately disposed of in the state courts or ultimately on review in the United States Supreme Court. Boyle, therefore, appears to mean that in an appropriate case under § 1983, an injunction against state court proceedings is permissible.

The Supreme Court of the United States has expressly refrained from passing on this question on at least three separate occasions. Dombrowski v. Pfister, 380 U.S. 479, 484, n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Cameron v. Johnson, 390 U.S. 611, 613, n. 3, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Younger v. Harris, 401 U.S. pp. 53, 54, 91 S.Ct. p. 755, 27 L.Ed.2d 669 (February 23, 1971).

■ For these reasons, as well as those expressed in Landry v. Daley, 288 F.Supp. 200, 224 (N.D.Ill.1968) and my dissent in Zwicker v. Boll, 270 F.Supp. 131, 144–146 (W.D.Wis.1967), I conclude that a temporary restraining order is permissible in some circumstances, and I conclude further that the circumstances of the present case render such an order appropriate.

### (2)

My principal purpose in entering the opinion and order in Kennan v. Nichol, 71–C–118, on April 27, 1971, and the

opinion and order in Kennan v. Warren, 71–C–132, on May 5, 1971, is to prepare the way for a federal three-judge court to consider all of the implications of the state court criminal prosecution of Dr. Kennan, the state court civil injunction action against him, and the Medical Board proceedings in his case, all of which are grounded in the state's criminal statutes on abortion, Section 940.-04(1) and (5). It will be for the three-judge court to determine whether jurisdiction is present; if so, whether it should nevertheless abstain; if it should not abstain, whether plaintiff is entitled to the relief sought.

It is wholly understandable and proper in a situation of this kind that state and local prosecutors and opposing parties and counsel should bring what they consider to be appropriate proceedings in what they consider to be the appropriate judicial forums, and that when such a proceeding is commenced in a state court, the state court should respond as it may feel obliged to respond under the law as it has been determined, or, if the law has not yet been determined, then under the law as the state court believes it should be. I suggest that when a party commences a proceeding in a federal court, it is equally understandable and proper that the federal court should respond as it may feel obliged to respond under the law as it has been determined, or, if the law has not yet been determined, then under the law as the federal court believes it should be.

These questions of the relationships between the state and federal courts have a long and significant history which was most recently the subject of extended and discrepant discussion by various members of the United States Supreme Court in opinions filed February 23, 1971, in Younger v. Harris, and several related cases. They are profound questions, and their resolution requires a weighing of many competing values.

For the present I undertake to say only that the question of when and under what circumstances the doors of the federal district courts will be open to plaintiffs seeking to vindicate rights claimed to be secured by the federal constitution is a *national* question. When the question is finally answered, the doors of the federal courts will be open or closed, not only to a physician or a pregnant married woman in Madison, Wisconsin, but to blacks in Mississippi, slum dwellers in Harlem, and grape pickers in California. A federal court must not be headstrong. But amenity among state and federal judicial officers must never cause a federal court to close its door to those to whom the door should open.

### OPINION AND TEMPORARY RESTRAINING ORDER OF MAY 15, 1971

The history of this litigation (including a companion case, Kennan v. Nichol, 71–C–118) to that date is summarized in my opinion entered May 5, 1971, in this action (71–C–132). Since that date, with leave of the court, plaintiff has joined Judge Bardwell as a defendant and now has moved for a temporary restraining order against Judge Bardwell. A hearing has been held on the motion.

I hereby incorporate herein and reaffirm all of those findings of fact and conclusions of law set forth in part (2) of my opinion and order entered herein May 5, 1971, as supplemented by an opinion entered May 6, 1971, and as amended and corrected by an opinion entered herein May 10, 1971. I add the following findings of fact, solely for the purpose of deciding this present motion for a temporary restraining order with respect to Judge Bardwell.

I find that on May 5, 1971, Judge Bardwell held a hearing in State of Wisconsin v. Kennan, No. 133151, in his branch of the Circuit Court for Dane County, Wisconsin, on the question whether to continue a restraining order which he had entered therein April 30, 1971. I find that during the course of said hearing before Judge Bardwell, my

temporary restraining order was entered in this action, directed to the Attorney General and his staff. I find that upon becoming aware of my order, the Assistant Attorney General then appearing before Judge Bardwell on behalf of the plaintiff State of Wisconsin in case number 133151, expressed the view that he could not continue to press that action. In the course of the May 5 hearing in his court, Judge Bardwell made various comments from the bench, some of which might be construed as orders affecting Dr. Kennan. However, on May 6, 1971, he entered a written temporary restraining order. Although the May 6 order is not explicit to this effect, I construe it as superseding any and all previous restraining orders, written or oral, which may have been entered or uttered by Judge Bardwell in case number 133151. The operative portion of the May 6 order reads as follows:

> "It is therefore ordered that the defendant, Alfred L. Kennan, be and hereby is temporarily restrained from performing any further abortions in the State of Wisconsin unless said abortions are performed in a licensed maternity hospital as required by sec. 940.04(5) (c)." [1]

Based upon the entire record herein, including the transcript of the May 5 hearing in Judge Bardwell's court, especially page 14 thereof, I find that Judge Bardwell intends to initiate contempt proceedings against Dr. Kennan should it appear that Dr. Kennan is in violation of the May 6 temporary restraining order.

I find that among the hospitals in the City of Madison, abortions are presently performed only in University Hospitals, and that a maximum of ten abortions per week are performed at University Hospitals. I presume, and therefore find, that the said abortions are performed in compliance with the provisions of Section 940.04(1) and (5), Wis.Stat. I find that the program at University Hospitals is substantially inadequate to meet the needs of women who desire abortions in cases involving embryos of four months or less.

In a supplemental opinion entered herein on May 6, I made this statement:

> "My principal purpose in entering the opinion and order in Kennan v. Nichol, 71–C–118, on April 27, 1971, and the opinion and order in Kennan v. Warren, 71–C–132, on May 5, 1971, is to prepare the way for a federal three-judge court to consider all of the implications of the state court criminal prosecution of Dr. Kennan, the state court civil injunction action against him, and the Medical Board proceedings in his case, all of which are grounded in the state's criminal statutes on abortion, Section 940.04(1) and (5). It will be for the three-judge court to determine whether jurisdiction is present; if so, whether it should nevertheless abstain; if it should not abstain, whether plaintiff is entitled to the relief sought."

The purpose explained in this passage continues to be my principal purpose. I have concluded that there is jurisdiction over the subject matter in this court; that because of the chronological relationship between the commencement of the action by Dr. Kennan in this court on April 20 (71–C–118), on the one hand, and the commencement of the criminal and civil actions against him in the state courts, on the other, there is a reasonably good chance that a federal three-judge court will decide that abstention is inappropriate; that there is a reasonably good chance that the plaintiffs in 71–C–118 and 71–C–132 will ultimately prevail before a federal three-judge court on the merits of their contention that Section 940.04(1) and (5) violates a right secured to pregnant women by the Constitution of the United States to decide whether they should carry or reject unquickened embryos and a right secured to physicians by the Constitution of the United States to perform abortions in such cases; and that, assuming

---

1. The order actually reads "940.04(3) (c)," but this is clearly a typographical error.

these rights are secured by the federal constitution, irreparable damage to those rights will occur if the enforcement of Section 940.04(1) and (5) is not temporarily restrained pending a determination of the issue, because time is so obviously of the essence for those women for whom Dr. Kennan would otherwise be free to perform abortions and for whom alternative opportunities for this procedure are unavailable. I now reaffirm all of these conclusions.

Given all of these findings and conclusions, the further conclusion would appear inevitable: that Judge Bardwell should be temporarily restrained, just as the Attorney General has been temporarily restrained, with respect to the state court civil injunction action (number 133151).

■ However, counsel for Judge Bardwell in this action in this court contends that no such restraint is necessary or justified because of the precise terms of the May 6 order. The contention is to this effect: so far as Judge Bardwell's May 6 order is concerned, Dr. Kennan is free to perform an abortion in any case, whether or not the embryo is quickened, whether or not he is advised by two other physicians that the abortion is necessary to save the life of the mother or necessary to the mental or physical health of the mother, and whether or not the abortion is in fact necessary to save the life of the mother or necessary to the mental or physical health of the mother, provided only that the abortion is performed in a licensed maternity hospital. The simple requirement that abortions be performed in licensed maternity hospitals, standing alone, so the argument goes, cannot be said to violate the federal constitution. Therefore, the argument concludes, no restraint against Judge Bardwell is appropriate.

There is a flaw in this contention which I consider fatal. Implicit in it is the proposition that all state and local officers have been enjoined by the state courts from enforcing the provisions of Section 940.04(1) and (5) against Dr. Kennan and his assistants and against the officers and staffs of licensed maternity hospitals, save only for the requirement of Section 940.04(5)(c) that abortions be performed in a licensed maternity hospital. But quite the opposite is true. The Attorney General, the District Attorney for Dane County, and the Medical Examining Board of the State of Wisconsin have made it unmistakably clear to all concerned that they intend to enforce all of the provisions of Section 940.04(1) and (5) against anyone. So far as I am aware, no state court has enjoined any of these state or local officers from enforcing any portion of Section 940.04(1) and (5) against anyone, including Dr. Kennan.

The Wisconsin statutes do contain an express provision for a procedure in the state courts which can eliminate the necessity for intervention by a federal court in a case in which it is contended that a Wisconsin statute violates rights secured by the federal constitution. Section 227.26, Wis.Stat. It provides that the Attorney General may bring an action in the Circuit Court of Dane County to enforce the disputed statute, with a prompt appeal available to the Supreme Court of Wisconsin. Section 227.26 specifically provides: "The circuit court *shall*, when such suit is brought, grant a stay of proceedings by any state department, board, commission or officer under such statute * * * pending the determination of such suit in the courts of the state [emphasis added]." It further provides that a copy of this stay order is to be sent to the federal court in which there is pending the action challenging the federal constitutionality of the statute. A complementary federal statute provides that in these circumstances, the federal court is to stay proceedings in the federal court pending the outcome of the state court test of the disputed state statute. 28 U.S.C. § 2284 (5).[2]

---

2. I note that in his May 6 order, Judge Bardwell finds that it is Section 227.26,

Wis.Stat. (as well as Section 448.19, Wis. Stat.) which grants jurisdiction to his

■ Clearly, these complementary state and federal statutes contemplate that the state courts will themselves fully protect the asserted federal constitutional rights while the state courts pass on the merits of the controversy, and that when the state courts do furnish this full protection, there is no need for intervention by the federal court. In the present situation, nothing has been done by any state court to protect anyone in the exercise of the asserted federal constitutional rights. The effect of Judge Bardwell's order is only to advise Dr. Kennan that he will not be punished for contempt of the order if he performs an abortion in a licensed maternity hospital. Even if Dr. Kennan were to perform in a licensed maternity hospital an abortion which is otherwise unlawful under Section 940.04(1) and (5), Judge Bardwell's order affords him no protection against an immediate criminal prosecution or against immediate suspension of his license. Moreover, Judge Bardwell protects Dr. Kennan even from punishment for contempt for performing an otherwise unlawful abortion only on the condition that Dr. Kennan obtain the cooperation of the officers and staff of a licensed maternity hospital, all of whom would be immediately vulnerable to the imposition of criminal, civil, and administrative sanctions.

Under these circumstances, I find and conclude that neither Judge Bardwell nor any state court has made it possible for the federal court to stay its hand. It appears that until the merits of the controversy have been determined, the asserted federal constitutional rights can be protected only by the entry of a temporary order by this court restraining the enforcement of Judge Bardwell's May 6 order.

court to entertain the civil injunction suit brought by the Attorney General (case number 133–151). In oral argument in this court on May 4, the Attorney General emphatically denied that case number 133–151 is based upon Section 227.26.

## ORDER

Upon the entire record herein, and pursuant to 28 U.S.C. § 2284(3), it is hereby ordered that:

(1) the defendant, the Honorable Richard W. Bardwell, individually and as Circuit Judge for Dane County, State of Wisconsin, and any and all persons acting in concert with him or at his direction, are restrained from any and all proceedings to enforce against the plaintiff herein, Alfred L. Kennan, and against anyone acting in concert with him or at his direction, any of the provisions of the temporary restraining order entered by said defendant on May 6, 1971, in State of Wisconsin v. Alfred L. Kennan, Case No. 133151;

(2) that this order is to remain in force until the hearing by a full three-judge court if the Chief Judge of the Circuit convenes such a court in response to my notification to him under 28 U.S.C. § 2284(1);

(3) that at any time prior to the convening of a three-judge court in this action by the Chief Judge of the Circuit, any party hereto may apply to the single judge of this district for an order modifying or amending the terms of this order; and

(4) that a copy of this order may be served upon the defendant, the Honorable Richard W. Bardwell, by any attorney of record for the plaintiff in this action, or by any partner or associate of said attorney in his law firm, or by the

The position of the Attorney General is understandable since it appears that in a Section 227.26 action, the Circuit Court for Dane County is *required* to stay all enforcement of the disputed statute.

538

United States Marshal for this district or his deputy, or by the Sheriff of Dane County, Wisconsin, or his deputy.